UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

VANCE AURIS MCMILLAN,

      Petitioner,

v.                                                                  Case No. 3:17cv876-LC-HTC

MARK S. INCH,[1]

      Respondent.

_____/

ORDER and REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Vance Auris McMillan's amended habeas corpus petition under 28 U.S.C. § 2254, challenging his conviction and sentence of life imprisonment for Capital Sexual Battery (Victim Under 12) from the First Judicial Circuit for Santa Rosa County in case number 2013-CF-0729. ECF Doc. 7. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the amended petition, ECF Doc. 7, the State's Response, ECF Doc. 21, and McMillan's reply, ECF Doc. 30, the undersigned recommends the petition be DENIED without an evidentiary hearing.

---

[1] Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent. *See* Fed. R. Civ. P. 25(d).

# I.    BACKGROUND

## A.    The Offense and Conviction

According to the evidence presented at trial, McMillan was at the home of Altovise Moss ("Moss"), with whom he was in a romantic relationship, on the evening of May 24, 2013.  Around 10:00 PM, McMillan and Moss began having sex, but stopped because McMillan was drunk and Moss lost interest.  Later that night, Moss woke up and when she did not see McMillan in her bed searched the house for him.  Eventually, she found him in her 8-year-old child, X.R.'s, room with nothing on but a Winnie-the-Pooh blanket wrapped around his waist.

McMillan and Moss returned to Moss's room, and the next morning, before McMillan arose, Moss asked X.R. about McMillan being in her room.  She learned from X.R. that McMillan had rubbed her back and touched her inappropriately.  Moss confronted McMillan with what she had been told, kicked him out of the home, and called the police.

On July 8, 2013, McMillan was charged by Information with one felony: capital sexual battery by a person over eighteen years of age on a person under twelve years of age.  ECF Doc. 21-3 at 38.  McMillan pled not guilty and, on August 4, 2014, waived his right to a trial by jury.  ECF Doc. 21-6 (transcript of waiver colloquy).  On October 1, 2014, a one-day bench trial was held before Judge Simon of the First Judicial Circuit Court, in Santa Rosa County.  ECF Doc. 21-8 (transcript

of trial). Judge Simon found McMillan guilty and, immediately after the trial, sentenced him to life in prison. *Id.* at 197.

### B.    Postconviction Procedural History and Timeliness

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas relief must be filed within one-year limitations of certain "trigger" dates. 28 U.S.C. § 2244(d)(1). For purposes of McMillan's petition, the applicable trigger date is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review". 28 U.S.C. § 2244(d)(1)(A). Additionally, the limitations period is tolled for the time during which a "properly filed" postconviction motion is pending in state court. *Id.* § 2244(d)(2). As an initial matter, Respondent does not dispute that the petition is timely filed. Upon review, the undersigned also finds, *albeit* for different reasons, that the petition is timely filed.

McMillan filed a direct appeal of his judgment with the First District Court of Appeal ("First DCA") on October 13, 2014. ECF Doc. 21-5 at 24. The First DCA affirmed *per curiam* and without written opinion on November 24, 2015 in case number 1D14-4732. ECF Doc. 21-13 at 2. Thus, the judgment became final for AEDPA purposes ninety (90) days later, on February 22, 2016. *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) (a judgment of conviction becomes final, for purposes of § 2244(d)(1), upon expiration of the 90-

day period in which a defendant may seek direct review of his conviction in the United States Supreme Court).

On February 19, 2016, Petitioner filed a habeas petition with the First DCA, (case 1D16-1001).[2]  ECF Doc. 21-17 at 2.  The First DCA denied the petition, *per curiam* and without written opinion, on March 22, 2016, ECF Doc. 21-18 at 2, and denied McMillan's motion for rehearing on May 2, 2016.  ECF Doc. 21-20 at 2.  Thus, the AEDPA clock began running on May 3, 2016,[3] and ran for 196 days until Petitioner filed a Rule 3.850 post-conviction motion on November 15, 2016.[4]  ECF Doc. 21-23 at 26.

The state court denied the 3.850 motion on December 21, 2016, without prejudice to McMillan filing an amended motion within sixty (60) days.  ECF Doc. 21-23 at 164.  Petitioner did not file an amended motion but instead filed a "Motion for Court to Enter Final Order" on February 14, 2017.  *Id.* at 166.  On February 21, 2017, the state court dismissed the 3.850 motion with prejudice.  ECF Doc. 21-23 at 170-71.

---

[2] The Respondent states that this petition was filed March 8, 2016.  ECF Doc. 21 at 14.  However, under the "prison mailbox rule," a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.  *See* Habeas Rule 3(d) and *Houston v. Lack*, 487 U.S. 266, 275-76 (1988).  The time stamp at the top of page 1 of the petition indicates it was delivered to prison mail officials on February 19, 2016.  ECF Doc. 21-17 at 2.

[3] Petitioner wrongly states that a mandate was issued by the First DCA on May 18, 2016.  ECF Doc. 7 at 3.  May 18, 2016 was the date the orders denying the petition and rehearing was sent to West Publishing by the First DCA.

[4] Respondent does not appear to include the 196 days in his timeliness analysis.  *See* ECF Doc. 21 at 13-15.  Regardless, even with the running of 196 days between May 3, 2016 and November 14, 2016, the petition is nonetheless timely.

On March 15, 2017, McMillan appealed the dismissal to the First DCA (case number 1D17-1069).[5]  ECF Doc. 21-23 at 172.  The First DCA affirmed, *per curiam* and without written opinion, on June 6, 2017.  ECF Doc. 21-24 at 2.  The First DCA issued its mandate on June 22, 2017.  ECF Doc. 21-27 at 3.  Thus, the AEDPA clock began to run the next day.  Because 196 days had already expired, McMillan had 169 days (until December 11, 2017) to file a federal petition.[6]  Petitioner, through counsel, filed the original federal petition in this case on December 7, 2017, prior to the expiration of the AEDPA clock.

## II.    LEGAL STANDARDS

### A.    Federal Review of State Court Decision

Under the standard of review for a § 2254 motion, this Court should not  grant habeas relief unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

---

[5] The Respondent treats the time between the state court's dismissal of 3.850 motion and the notice of appeal as time off the AEDPA clock.  ECF Doc. 21 at 14.  However, that is not correct.  The time after the dismissal was tolled until the First DCA issued its mandate because the notice of appeal was timely filed.  *See Woulard v. Sec'y, Dep't of Corr.*, 707 F. App'x 631, 633 (11th Cir. 2017) ("[i]n Florida, a state post-conviction motion is pending until the appropriate appellate court issues the mandate for its order affirming a state trial court's denial of the motion").

[6] Because 169 days falls on Saturday, December 9, 2017, the deadline falls on the following Monday, December 11, 2017.  *See e.g., Rogers v. United States,* 180 F.3d 349, 355, n. 13 (1st Cir. 1999) (applying Fed. R. Civ. P. 6(a) to time calculation under the AEDPA).

The United States Supreme Court set forth the framework for a § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the *Williams* framework, a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010).

Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the . . . case." *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring). Even if a federal court concludes the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *See Maharaj v. Sec'y Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

**B.    Legal Standard for Ineffective Assistance of Trial Counsel**

McMillan's amended petition contains six (7) claims of ineffective assistance of trial counsel ("IATC"), including the two (2) that were raised in his 3.850 motion. ECF Doc. 7. To prevail on these claims, McMillan must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 688 (1984), requiring that

he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

Counsel's performance is deficient only if counsel's "identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. The deficient performance prejudiced the defendant only if the reasonable probability of a different result rises to a level that is "sufficient to undermine confidence in the outcome." *Id.* at 694. To prevail on a claim of ineffective assistance of counsel, both parts of the *Strickland* test must be satisfied. *Bester v. Warden, Att'y Gen. of the State of Ala.*, 836 F.3d 1331, 1337 (11th Cir. 2016) (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)). However, a court need only address one prong, and if it is found unsatisfied, the analysis ends. *Id.*

## III.    DISCUSSION

McMillan claims he was prejudiced by trial counsel's deficient performance in: (1) failing to object to admission of cell phone text messages whose authenticity was not established; (2) failing to object and challenge the admission of child victim hearsay; (3) failing to raise on direct appeal that the statement of the alleged victim during the CPT interview was insufficient to sustain a conviction where the statement was inconsistent with the trial testimony; (4) failing to call Jennifer Michelle Allen as a witness; (5) failing to impeach Moss regarding her inconsistent

statements and motive to harm McMillan; (6) failing to withdraw due to conflict of interest arising from counsel's prior representation of Moss; and (7) failing in presenting his case for actual innocence.

The undersigned has considered each of these IATC clams and finds that none warrant relief.

### A.    IATC - Failing to Object to the Admission of Unauthorized Cell Phone Text Messages

At trial, Moss testified that a few days after the incident, McMillan texted her on her cell phone using a number he had often texted from before.  ECF Doc. 12-8 at 53.  She put the number in her contacts under the name "Vance."  *Id.* at 55.  In the texts McMillan made statements concerning the incident, so Moss brought the phone to a detective who took photographs of the text messages, which photographs were entered into evidence at trial.  *Id.* at 79-80.  The photographs showed the messages and that they were purportedly "From Vance".  ECF Doc. 21-23 at 128-131 (copies of the photographs of the texts).  The texts read as follows:

> I didn't want to tell it over the ph. cuz it might make me look bad.  but sis I have to get it off my chest.  I was checkin the house like always seen she was hangin half off the bed u know I was necked she was up but I still moved her to the middle an passed out on the floor.  Wen u knocked I looked an she was bac half off the bed so I moved her bac. She was up then, so I put something around me answered the door that's it. Of course I touched her to move her that's it, but she was up both times.  I've should've been dressed that's why I'm beating myself up. There that shit was eating me.

*Id.*

McMillan argues counsel was ineffective for failing to object to the admission of the cell phone text messages. ECF Doc. 7 at 29. The Respondent argues any such objection would have been meritless and overruled because there was sufficient circumstantial evidence to authenticate the texts and trial counsel was able to challenge the veracity of Moss's testimony during cross-examination and in closing argument. ECF Doc. 21 at 26-33.

1.    Petitioner Has Not Shown Deficient Performance of Counsel

Under Florida law, "[a]uthentication or identification of evidence is required as a condition precedent to its admissibility. The requirements of this section are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fla. Stat. § 90.901. "Further, in determining whether the evidence is sufficient for this purpose 'the trial judge must evaluate each instance on its own merits, there being no specific list of requirements for such a determination.'" *Allen v. State*, 492 So.2d 802, 803 (Fla. 1st DCA 1986) (quoting *Justus v. State*, 438 So.2d 358, 365 (Fla.1983)).

"Evidence may be authenticated by appearance, content, substance, internal patterns, or other distinctive characteristics taken in conjunction with the circumstances. In addition, the evidence may be authenticated either by using extrinsic evidence, or by showing that it meets the requirements for self-authentication." *Jackson v. State*, 979 So.2d 1153, 1154 (Fla. 5th DCA 2008). Importantly, under Section 90.901, only "some showing of its genuineness" is

required for evidence to be admissible; the ultimate question of authenticity is for the factfinder. *Jackson*, 979 So. 2d at 1154 ("Once a prima facie showing of authenticity is made pursuant to this section, however, the evidence may be admitted, and the ultimate question of authenticity is left for the jury to determine. The opposing party, of course, is free to challenge its genuineness.").

Nonetheless, McMillan argues it was improper to rely solely on Moss's testimony to authenticate the text messages. ECF Doc. 30 at 2-3. McMillan argues the State should have independently or forensically verified the text messages. *Id.* Additionally, he argues that relying on Moss's testimony, alone, was problematic because counsel had previously represented Moss and thus may have been limited in his cross-examination of her and that counsel failed to impeach her. *Id.*

The fact that the State did not independently verify the text messages as being from McMillan did not render the evidence inadmissible under Florida law. Once the State established a prima facie showing of the authenticity of the messages, which it did through Moss's testimony regarding how she knew the messages were from Petitioner and how the pictures of the texts were produced, it was up to the factfinder (here, the judge) to determine whether the messages were indeed authentic. In other words, the issue raised by McMillan goes to the weight of the evidence and not its admissibility.

Indeed, the Eleventh Circuit's decision in *United States v. Lebowitz,* 676 F.3d 1000, 1009 (11th Cir. 2012), applying Federal Rule 901 is instructive on this issue.

In *Lebowitz*, a child pornography case, the court upheld the admission of printouts of internet chat conversations between the child victim and defendant where the child victim "testified that he had printed out the chats and that the printouts submitted into evidence accurately reflected the chat messages." *Id.* However, the child "also told the jury he could not remember certain aspects of how the printouts were created," and no testimony from government agents forensically verifying the account information of the individuals chatting was offered.

Nevertheless, the Eleventh Circuit found that the testimony of the child was sufficient to authenticate a document under Rule 901. The Court held the rule only requires a proponent to present "sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be." *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir.2010) (quotation omitted). After meeting the prima facie burden, the evidence may be admitted, and the ultimate question of authenticity is then decided by the jury. *Id.* "A district court has discretion to determine authenticity, and that determination should not be disturbed on appeal absent a showing that there is no competent evidence in the record to support it." *United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir.2000). "Evidence may be authenticated through the testimony of a witness with knowledge." *Id.* (quoting *United States v. Lanzon,* 639 F.3d 1293, 1300 (11th Cir.2011)).

Also, Petitioner's arguments regarding counsel's failure to impeach or to adequately cross-examine Moss regarding the text messages are not supported by

the record.  Defense counsel was able to establish on cross-examination that the mother could have put the name "Vance" on any number in her contacts, ECF Doc. 21-8 at 63-64, and argued at closing that the text messages had little probative value because only the mother authenticated the messages and the police did not verify the identity of "Vance" on the messages through phone records.  *Id.* at 182-83.  He also argued that forensic examination of McMillan's mother's phone would have revealed that  "Ms. Moss did make this up, and that she was trying to set Mr. McMillan up or get him in trouble or whatever and so she fabricated and changed the name on the phone to the make the message come up that way so that could go against Ms. Moss."  *Id.* at 183-84.

Given Moss's testimony that she had received text messages from Petitioner on that same number on prior occasions, that the number was programmed on Moss's phone as Petitioner's number, and the content of the messages (showing that the messages had to have been sent by someone familiar with the incident), any objection to admissibility of the text messages would have been overruled.  Thus, counsel could not have been deficient for failing to raise a meritless argument.  *See United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir. 2000).

2.    Petitioner has not shown prejudice under *Strickland*

This IATC claim was one of the two grounds raised by McMillan in his 3.850 motion.  The circuit court summarily dismissed the motion, finding that "both claims are legally insufficient as neither alleges proper prejudice."  ECF Doc. 21-23 at 170-

71.  The undersigned finds that even if counsel's performance was deficient, the State courts' conclusion that such performance did not prejudice the Petitioner is not contrary to federal law or an unreasonable determination of fact.[7]

Under *Strickland*, counsel's performance prejudiced Petitioner only if the reasonable probability of a different result rises to a level that is "sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  McMillan argues that "the admission of these text messages was critical to the State's case against Mr. McMillan because, according to the State, the case turned on his admission of guilt through these text messages and the credibility of X.R.  The text messages were critical to placing Mr. McMillan in the room that night and demonstrating some implicit involvement."  ECF Doc. 7.

Counsel's failure to object to the admissibility of the text messages was not prejudicial because there was substantial other evidence against McMillan sufficient to support a finding of guilt.  First, Moss testified she discovered McMillan nude in her daughter's room that night except for a Winnie-the-Pooh blanket around his waist, with the door locked.  She spoke with X.R. immediately upon waking, who told Moss that McMillan had touched her.  Moss was so disturbed by X.R.'s account that she grabbed a hammer to defend herself when confronting McMillan about the

---

[7] Because the First DCA did not issue a written opinion when it affirmed the circuit court's dismissal of the 3.850 motion, this Court should "look through" the opinion to the circuit court's written dismissal order and presume that the First DCA adopted the same reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

issue. ECF Doc. 12-8 at 50-51. Both witnesses placed McMillan in the room that night and both were subject to cross-examination to test their credibility. Also, X.R.'s older sister testified she was present the night of May 24 and that McMillan spent the night at the home on that date. *Id.* at 175. She was also present when McMillan and his friend came to the home to pick up his belongings after the incident. *Id.* at 175-76.

Thus, the admission of the text messages does not rise to the level of "undermining confidence in the outcome" of the trial and does not entitle Petitioner to habeas relief. *See Strickland*, 466 U.S. at 694.

## B. IATC - Failure to Object and Challenge the Admission of Child Victim Hearsay

Within a day of the incident, X.R. was interviewed by the Child Protection Team ("CPT"), and the interview was recorded. *See* ECF Doc. 21-7 at 16 (Transcript of interview). The State gave notice of its intent to introduce the taped testimony at trial. *Id.* at 5. Thus, as required under Florida law, the circuit court judge held a hearing the day before trial to determine whether the statements made by X.R. to the investigator was admissible. ECF Doc. 21-7 (Transcript of hearing). The judge, who was also the trial judge, viewed the video at the hearing, which was authenticated by the forensic interviewer who conducted the video, and concluded that it was admissible.

McMillan argues that trial counsel should have objected to the admissibility of the recorded statements on the basis that they were unreliable because counsel knew of evidence showing that X.R. may have been coached by Moss, who had a motive to falsely accuse Petitioner and a history of falsely accusing him. ECF Doc. 7 at 30-31. Specifically, McMillan argues Moss admitted in her deposition that she was angry with McMillan because he had observed an incident of domestic violence for which the mother was charged and (1) did not bail her out and (2) was not willing to be a witness on her behalf. McMillan also argues that counsel knew Moss had previously accused McMillan of having sexual relations with another of her children, and that case was eventually dismissed by the State.

McMillan argues that counsel was aware of these facts at the time of the pretrial hearing and, yet, failed to object to the admission of this testimony or make the court aware of the facts. Because of this omission, the State was in fact able to argue to the trial court that "[t]here was absolutely no evidence from which this court could infer this child had a motive to make this up or that she was coached." McMillan argues that the omitted evidence would have shown that "[w]hile the child does not expressly have a motive, [the mother] admittedly does." ECF Doc. 7 at 30-31.

Under Florida law, certain child hearsay, such as the video of the child talking to the Child Protection Team, is admissible as an exception to the hearsay rule if it meets certain requirements. *See* Fla. Stat. § 90.803(23). "Unless the source of

information or the method or circumstances by which the statement is reported indicates a lack of trustworthiness" an out-of-court statement made by a child victim alleging sexual abuse "is admissible in evidence in any civil or criminal proceeding" if the court holds a hearing outside the presence of the jury and finds "that the time, content, and circumstances of the statement provide sufficient safeguards of reliability." *Id.* In making its determination, "the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate." *Id.*

In determining the video was admissible, the circuit court judge found (1) the child to be articulate and not angry or confused; (2) the terminology she used in describing the incident to be consistent with her age; (3) no evidence for the child to fabricate; (4) no indication that the child engages in fantasy; (5) the interviewer's questions were non-leading; and (6) the child's mannerisms to be consistent with her age. ECF Doc. 21-7 at 44-46. Thus the judge found that the "time, content, and the circumstances of the statements indicate sufficient safeguards to admit" the videotapes. *Id.* Based on the judge's findings and the law for admissibility of the videotapes, counsel aptly recognized he did not have any basis for objecting to the admissibility of the video. As previously stated, counsel cannot be deemed ineffective for failing to raise a meritless argument. *Chandler v. Moore*, 240 F.3d

907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection).

Moreover, while it is true that counsel did not object to the admissibility of the video, counsel made clear that he intended to make arguments at the trial regarding whether what was reported in the video was true – which he did. ECF Doc. 21-7 at 43-44. In other words, counsel made a strategic decision to use the discrepancies in X.R.'s statements to the interviewer on the videotape with X.R.'s testimony at trial to bolster McMillan's theory of the case – that the incident involved someone else who X.R. "didn't know who that was for whatever but thought it was Mr. McMillan . . . ." ECF Doc. 21-8 at 182.

In closing argument counsel specifically described the differences between X.R.'s descriptions of the incident in the taped statement and her testimony in open court, ECF Doc. 21-8 at 185-88, and relied upon those differences to argue the following:

> So I think it's certainly a reasonable possibility that someone else committed this crime. I'm not saying she's making the crime up. I'm saying that somebody else committed it, and she never during the initial interview when she was asked these questions, she was not able to actually explain or say how she knew that that was Vance McMillan, and based on the other evidence you're heard, I suggest that it was not, and that there are certain reasonable doubt about Mr. McMillan even being involved in that.

*Id.* at 188-89.

"Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 129 (2009) (quotation omitted); *see also Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298, 1302 (11th Cir. 2019) ("It is especially difficult to succeed with an ineffective assistance claim questioning the strategic decisions of trial counsel who were informed of the available evidence."). Although counsel's arguments were ultimately unsuccessful, an adverse ruling does not render counsel's performance constitutionally ineffective. *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010); *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

This IATC claim was the other IATC claim Petitioner raised in his 3.850 motion, which the circuit court found to be legally insufficient for lack of prejudice. The undersigned finds that this conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). Not only did counsel mitigate any prejudice the admission of the videotape may have caused by highlighting the discrepancies in X.R.'s testimonies as discussed above, but given the testimonies presented at trial from Moss and X.R.'s sister, it simply cannot be said that counsel's performance, had it been different, would have changed the outcome of the case. *See Strickland*, 466 U.S. at 694.

Accordingly, because counsel's failure to object to the admission of the videotaped statement of the child was neither deficient nor prejudicial, Petitioner is not entitled to habeas relief on this ground.

### C. Ineffective Assistance of Appellate Counsel - Failure to Brief on Direct Appeal That the Statement of the Alleged Victim During the CPT Interview Was Insufficient to Sustain a Conviction Because the Statement Was Inconsistent with Her Trial Testimony

McMillan argues appellate counsel was ineffective for failing to brief on direct appeal that the statement of the alleged victim during the CPT interview was insufficient to sustain a conviction because the statement was inconsistent with the trial testimony of the child. ECF Doc. 7 at 31-32. The Secretary responded that such an argument would have been an invitation to the First DCA to reweigh the conflicting evidence in the case and would have been rejected by the First DCA because under Florida law "an appellate court has no authority to reverse a defendant's conviction for sexual battery on ground that verdict was contrary to weight of evidence." ECF Doc. 21 at 39-40 (citing *Tibbs v. State*, 397 So. 2d 1120, 1123 (Fla. 1981), *aff'd sub nom. Tibbs v. Florida*, 457 U.S. 31 (1982) and *Robinson v. State*, 462 So. 2d 471 (Fla. 1st DCA 1984)).

Petitioner raised this issue in his petition filed with the First DCA in 1D16-1001, alleging ineffective assistance of appellate counsel. Doc. 21-17. The First DCA denied the petition, *per curiam* and without written opinion, on March 22, 2016, ECF Doc. 21-18 at 2, and denied McMillan's motion for rehearing on May 2,

2016 without written explanation. ECF Doc. 21-20 at 2. Because there is no written opinion setting out the state court's reason for denying this ground of relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principle to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Additionally, the Supreme Court stated in *Richter* that "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98.

The First DCA could have denied the claim on the reasonable basis that this argument would have had no merit on direct appeal. "Evidence is sufficient to support a conviction if, after reviewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found that, beyond a reasonable doubt, the defendant committed the essential elements of the crime." *United States v. Hernandez*, 141 F.3d 1042, 1052 (11th Cir. 1998) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *United States v. Ross,* 131 F.3d 970, 974 (11th Cir.1997)).

Moreover, "[i]t is emphatically not within the province of an appellate court to reweigh the evidence and the credibility of the witnesses at trial." *Id.* (citing *Snowden v. Singletary,* 135 F.3d 732, 739 (11th Cir.1998) ("Witness credibility is the sole province of the jury."); *Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1559 (11th Cir.1988) ("Assessing the weight of evidence and credibility of witnesses is reserved for the trier of fact.")). Under Florida law, "an appellate court should not

retry a case or reweigh conflicting evidence submitted to a jury," *Tibbs v. State*, 397 So. 2d 1120, 1123 (Fla. 1981). Instead, "the concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment." *Id.*

Here, it would not be unreasonable for the First DCA to decide there was such substantial, competent evidence. At trial, X.R. testified specifically that she previously knew McMillan because he had been a friend of the family and had spent the night at the home "sometimes." ECF Doc. 12-8 at 18. She stated she saw him come in the room and identified McMillan as her assailant in court without hesitation. *Id.* Moss also testified that she saw McMillan, nude, in the room that night, *id.* at 45-47, and X.R.'s older sister confirmed he had stayed there that night. *Id.* at 174-76. DNA evidence was found, which did not exclude Petitioner. This evidence, if believed, is sufficient to support a reasonable factfinder determining that McMillan was guilty of the charged offense regardless of any inconsistencies between X.R.'s testimony to the interviewer and at trial.

Nonetheless, McMillan argues his conviction is not supported by "substantial, competent" evidence because of the inconsistencies in X.R.'s testimonies. ECF Doc. 7 at 32. He argues the Secretary misconstrues his argument as one of sufficiency of the evidence when the argument is really that "inconsistent statements, standing alone, cannot be the basis or a conviction". ECF Doc. 30 at 5. As an initial

matter, there was other evidence of guilt. Regardless, the alleged inconsistencies identified by McMillan do not undermine the judge's finding of guilt. Instead, those inconsistencies could have been resolved in favor of a finding of guilt, particularly in light of the other evidence of guilt. Indeed, the alleged inconsistencies identified by McMillan, at best, show that X.R. may have misremembered some of the events of that night – like where his hands were and when. What is not inconsistent, however, was her testimony that his "male part" touched her "lady."

Moreover, to the extent the inconsistencies went to X.R.'s credibility, under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y, Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). Credibility and demeanor of a witness are considered to be questions of fact entitled to a presumption of correctness under the AEDPA, and the Petitioner has the burden to overcome the presumption by clear and convincing evidence. *Id.* The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1).

Petitioner, however, has not come close to providing clear and convincing evidence overcoming the presumption that the state court's finding was correct. Briefing this argument on direct appeal would not have been meritorious. *See Knowles v. Mirzayance*, 556 U.S. 111, 126-27 (2009) (the law does not require counsel to raise every available non-frivolous defense). McMillan is not entitled to habeas relief on this claim.

### D. IATC - Failure to Call Jennifer Michelle Allen as a Witness to Impeach Moss's Credibility

McMillan argues trial counsel was ineffective for failing to conduct an adequate pretrial investigation of potential witness Jennifer Michelle Allen and to call her to testify at trial to impeach Moss's credibility. Specifically, McMillan argues that Allen had knowledge that Moss had made false accusations similar to the accusations alleged against him. ECF Doc. 7 at 34-35.

As with the remainder of Petitioner's grounds for relief (grounds 4-7), this ground for relief was not raised and exhausted in state court. *See, e.g.,* ECF Doc. 7 at 9-10. Generally, before a § 2254 petitioner may obtain federal habeas corpus review, he must "exhaust" his federal claims by raising them in the appropriate court, giving the state courts an opportunity to decide the merits of the constitutional issue raised. *See* 28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Walker*, 533 U.S. 167, 178–79 (2001). His failure to do so could result in procedural default of the unexhausted

claim. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003).

However, in *Martinez v. Ryan*, 562 U.S. 1 (2012), the Supreme Court held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 562 U.S. at 17. In *Trevino v. Thaler*, 569 U.S. 413 (2013), the Supreme Court extended the holding of *Martinez* to cases where, as a matter of systemic operation, the first opportunity to challenge trial counsel's effectiveness is in state post-conviction proceedings. *Trevino*, 569 U.S. at 423–29.

To demonstrate cause in circumstances where *Martinez* and *Trevino* apply, a petitioner must establish (1) a substantial claim of ineffective assistance of trial counsel; (2) the cause for failing to exhaust the claim is ineffective post-conviction counsel or no post-conviction counsel in the initial-review collateral proceeding; (3) the state collateral proceeding was the initial opportunity to review the claim regarding trial counsel's performance; and (4) applicable state law requires, either by law or as a practical matter, that ineffective assistance of trial counsel claims be raised in the initial post-conviction proceeding. *Trevino*, 569 U.S at 423; *Martinez*,

562 U.S. at 13–18; *Rigg v. Warden, Blackwater River Corr. Facility,* 685 F. App'x

812, 815 (11th Cir.), *cert. denied, Rigg v. Maiorana,* 138 S. Ct. 485 (2017).

Even if a petitioner can establish cause under *Martinez*, he still must establish

prejudice as a result of the defaulted ineffective assistance of trial counsel claim; that

is, he must establish there is a reasonable probability that but for the error the result

of the proceeding would have been different.  *See Martinez*, 562 U.S. at 18

(remanding the questions "whether [Petitioner's] attorney in his first collateral

proceeding was ineffective [and] whether his claim of ineffective assistance of trial

counsel is substantial."); *see also Trevino*, 569 U.S. at 429 (remanding the questions

"whether Trevino's claim of ineffective assistance of trial counsel is substantial

[and] whether Trevino's initial state habeas attorney was ineffective").

As to this ground, the Secretary responds that McMillan's claims are vague

and conclusory and fail to meet his burden of showing that the failure to investigate

and call the witness prejudiced him.   Therefore, the claim fails to meet the

requirement from *Martinez* and its progeny of "a substantial claim of ineffective

assistance of trial counsel."  *Martinez*, 566 U.S. at 15-16.  The undersigned agrees.

*See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or

unsupported allegations cannot support an ineffective assistance of counsel claim).

Specifically, "evidence about the testimony of a putative witness must

generally be presented in the form of actual testimony by the witness or an affidavit.

A defendant cannot simply state that the testimony would have been favorable; self-

serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Petitioner, however, does not provide an affidavit of Allen's likely testimony, details about the claimed false accusations, a description of any legal outcome of the prior accusations, or even the details of the accusations themselves. Thus, his claims are vague and speculative. *See Aldrich v. Wainwright*, 777 F.2d 630, 637 (11th Cir. 1985) (speculation insufficient to carry burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation); *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich*).

Also, to the extent that Petitioner relies upon the case brought against McMillan for molesting X.R.'s older sister, Petitioner overstates the import of the State dropping that case. McMillan admits that the older sister's case was brought to trial on December 18, 2014 and that the sister was on the stand when she declined to continue testifying.[8] ECF Doc. 7 at 15. Eventually, on December 30, 2014, the State filed a notice of *nolle prosequi*, stating "Victim Declines to Prosecute." At that point, McMillan had already been convicted and sentenced to life imprisonment for molesting X.R. ECF Doc. 12-8 at 192. Therefore, it is disingenuous to argue

---

[8] First Judicial Circuit for Santa Rosa County case number 2013-CF-0728A.

that the *nolle prosequi* represents a likelihood that the accusation was false, as the reluctance of the older sister to testify could just as easily be attributed to her desire to avoid going through the rigors of a trial when McMillan was already sentenced to life imprisonment.  Therefore, the fact the State dropped the sister's case, alone, does not show that Moss had a history for making false accusations.

"A 'substantial' claim is one that has 'some merit.'" *Id.* at 816 (quoting *Martinez v. Ryan*, 566 U.S. at 14)).  Conversely, a claim is "insubstantial" if "it does not have any merit or...is wholly without factual support." *Martinez*, 566 U.S. at 16. McMillan fails to meet his burden of showing this claim is a substantial one because the vagueness of his claim renders it meritless.  *See Aldrich*, 777 F.2d at 637; *Johnson*, 256 F.3d at 1187.  Therefore, he cannot invoke the exception to the procedural default doctrine in *Martinez*, 566 U.S. at 15-16 (exception from procedural default does not apply if "the ineffective-assistance-of-trial-counsel claim is insubstantial, *i.e.,* it does not have any merit or that it is wholly without factual support").

### E.    IATC - Failure to Impeach Moss Regarding Her Inconsistent Statements and Motive to Harm McMillan

McMillan argues trial counsel was ineffective for failing to impeach Moss regarding her inconsistent statements and motive to harm McMillan.  Specifically, he argues Moss's testimony was critical, as she testified regarding the receipt of the text messages and observations of McMillan in the room on the night of the alleged

incident. However, according to McMillan, counsel never impeached Moss regarding the statements in her deposition, ECF Doc. 7-3 (transcript of deposition), that she was upset with McMillan for failing to bail her or out of jail and his unwillingness to testify on her behalf. McMillan thus argues he was prejudiced by this failure because the trial court, as the fact finder, was not fully apprised of Moss's bias, as well as her influence on her children.

Respondent argues this claim has no merit and thus is not substantial under *Martinez* because (1) Moss's deposition testimony was not inconsistent with her trial testimony, so it could not be used as a prior inconsistent statement to impeach the mother and (2) the allegations of bias and motive were contradicted by the record. ECF Doc. 21 at 44-45.

In her deposition taken November 7, 2013, Moss testified that in December of 2012, she was dating an older man, Christopher Prather, but had had a domestic altercation with him, which McMillan witnessed, and which resulted in her being arrested. ECF Doc 7-3 at 7. She stated that McMillan "didn't testify to Chris putting his hands on me and so I was upset about that. And he was supposed to bond me out of jail the next day. I had gave him my debit card but he never showed up. So I was upset with him about that and I wasn't talking to him." *Id.* She also testified that "my money was gone off the card." *Id.* at 8. McMillan argues this testimony, had it been brought up, would have changed the result of his trial because it shows Moss's bias and motive to harm him.

The undersigned disagrees.  Moss's deposition and trial testimony, as well as Petitioner's trial testimony, show that any anger Moss had towards Petitioner over that event had dissipated by the time the incident with X.R. was reported to authorities.  In her deposition, Moss testified she had gotten back together with McMillan after the event.  She testified that, in March 2013 the two started talking again; in April 2013, he moved into the residence; and by "[l]ate April," the two began having "a sexual relationship." *Id.* at 17.  Indeed, she testified at trial that the two were romantically involved and had engaged in sex the night of the incident. ECF Doc. 21-8 at 38.  Similarly, during his testimony, McMillan testified that as of April and May 2013 he lived with Moss until around May 17, 2013, when they argued about her cheating on him. *Id.* at 161-62.  These testimonies belie any claim that Moss got her daughter to fabricate charges against him because she was still mad at him.

Therefore, defense counsel was not ineffective for failing to impeach Moss with her deposition testimony.  Accordingly, McMillan fails to meet his burden of showing this claim is a substantial one. *See Aldrich*, 777 F.2d at 637; *Johnson*, 256 F.3d at 1187.

## F.    IATC - Trial Counsel Previously Represented Moss, Creating a Conflict of Interest in his Representation of McMillan

McMillan argues his counsel's prior representation of Moss and failure to get a waiver from McMillan limited counsel's ability to effectively represent him.

Respondent argues that Petitioner asks the Court to simply assume there was a conflict of interest without evidence of one and also argues that counsel was effective, even if there were a conflict, in getting admissions from Moss at deposition and at trial. ECF Doc. 21 at 46-47. For the reasons which follow, the undersigned agrees and finds that McMillan has not met his burden of showing that this claim is a "substantial one".

In *Cuyler v. Sullivan,* a case involving simultaneous representations, the Supreme Court held that "[i]n order to demonstrate a violation of his Sixth Amendment rights, [the petitioner] must establish that [1] an actual conflict of interest [2] adversely affected his lawyer's performance." 446 U.S. 335, 350 (1980). In this case, counsel represented Moss and McMillan successively, rather than simultaneously. Although the Eleventh Circuit has held that the *Culyer* test applies to successive representation cases, the court also noted that "generally, it is more difficult to prove that successive representation caused an actual conflict of interest than that simultaneous representation did so." *Freund v. Butterworth,* 165 F.3d 839, 859 (11th Cir. 1999) (quoting *Smith,* 815 F.2d at 1405). Additionally, the court clarified that to prove an "actual conflict" hindered petitioner's lawyer's performance, petitioner "must make a factual showing of inconsistent interests" or point to "specific instances in the record" to suggest an actual impairment of his or her interests. *Id.* (quoting *Smith,* 815 F.2d at 1404 and *Oliver v. Wainwright,* 782

F.2d 1521, 1524–25 (11th Cir.) (emphasis and internal quotation marks omitted), *cert. denied,* 479 U.S. 914 (1986)).

McMillan, however, does not identify any actual evidence of a conflict and, instead, argues that "[a]t the very least, this fact warrants a hearing to determine if counsel failed to vigorously cross-examine Ms. Moss to Mr. McMillan's detriment." ECF Doc. 7 at 37.  He offers no factual allegations of inconsistent interests or cites to any specific instances in the record to suggest an actual impairment of McMillan's interests.  He simply makes the conclusory allegation that a hearing is necessary determine "if counsel failed to vigorously cross-examine Ms. Moss to Mr. McMillan's detriment."  ECF Doc. 7 at 37.

Moreover, the record shows that counsel vigorously cross-examined Moss. During cross-examination, counsel got Moss to admit she had sex with McMillan the night of the incident, that she went back to bed with him after discovering him in her daughter's room, and that she had not mentioned any of that to the deputy who reported to the scene.   ECF Doc. 12-8 at 57-60.   He also explored other inconsistencies in her testimony, including that she told the deputy the next day that she awoke during the night with an uneasy feeling and discovered McMillan in her daughter's room but testified at trial that the reason she awoke during the night was because she felt McMillan leave the bed.  *Id.* at 59-60.  Counsel also got Moss to admit she could have simply programmed McMillan's name to come up for any number on her phone in relation to the text messages from her phone.  *Id.* at 63-64.

Thus, the record is devoid of any specific instances which tend to show any "actual impairment" of McMillan's representation because of counsel's prior representation of Moss.

### G.    IATC - Failure to Present McMillan's case for actual innocence

Finally, McMillan argues that "[b]ased on all of the foregoing facts presented, namely, Ms. Moss's credibility issues, the inconsistency of X.R.'s testimony, the fact the State dropped the charges during the trial of the other alleged victim, J.R., and the questionable reliability of the text messages, demonstrates why trial counsel failed in presenting his case for actual innocence." ECF Doc. 7 at 39. Respondent argues that there "is no basis to conclude that trial counsel was not doing all he could to defend his client and clear Petitioner of the charges. The fact of the matter is that there was overwhelming evidence that the child was sexually assaulted, and that petitioner was the person who committed this crime." ECF Doc. 21 at 47-48.

McMillan has not shown that this is a "substantial claim." Despite the label given this claim, Petitioner is essentially arguing that the cumulative effect of counsel's errors deprived him of a fair trial. For the reasons given above, however, the undersigned has determined that each of his ineffective assistance claims is meritless. Thus, there can be no cumulative error. *See Morales v. Sec'y, Fla. Dep't Corr.*, 710 F. App'x 362, 365 (11th Cir. 2017) ("[W]e have rejected all of the claims of error before us. There are, therefore, no errors to cumulate."). Additionally, as discussed herein, substantial evidence supported the finding of guilt. Therefore,

Petitioner has not shown anything "undermining confidence in the outcome" of the trial and entitling Petitioner to habeas relief.  *See Strickland*, 466 U.S. at 694.

## IV.    CONCLUSION

For the reasons stated above, McMillan is not entitled to habeas relief on any of the grounds raised in the amended petition.

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.   In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schirra v. Landorian*, 550 U.S. 465, 474 (2007).  The pertinent facts are fully developed in the record or the record otherwise precludes habeas relief; therefore, the Court is able to "adequately assess [Petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034 (2004).

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability.  28

U.S.C. § 2254 Rule 11(b).

After review of the record, the undersigned finds no substantial showing of

the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473,

483-84  (2000)  (explaining  how  to  satisfy  this  showing)  (citation

omitted).  Therefore, it is also recommended that the district court deny a certificate

of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order,

the court may direct the parties to submit arguments on whether a certificate should

issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to

this  recommendation  by  either  party,  that  party  may  bring  such  argument  to  the

attention  of  the  district  judge  in  the  objections  permitted  to  this  report  and

recommendation.

Accordingly, it is ORDERED:

1.    The clerk is directed to update the case file information to reflect Mark

S. Inch as the Respondent.

Additionally, it is respectfully RECOMMENDED:

1.    That the amended petition under 28 U.S.C. § 2254, challenging the

conviction in *State v. McMillan,* 2013-CF-0729, in the First Judicial Circuit, in and

for Santa Rosa County, Florida, ECF Doc. 7, be DENIED without an evidentiary

hearing.

2.      That a certificate of appealability be DENIED.

3.      That the clerk be directed to close the file.

At Pensacola, Florida, this 8ᵗʰ day of October, 2020.

*/s/ Hope Thai Cannon*
_____
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.